**Bennie M. CALLIP, Plaintiff-Appellant,**

v.

**HARRIS COUNTY CHILD WELFARE DEPARTMENT, et al., Defendants,**

**George Ford, Defendant-Appellee.**

No. 84–2506
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 27, 1985.

Jesse R. Funchess, Houston, Tex., for plaintiff-appellant.

Eric H. Nelson, Houston, Tex., for defendant-appellee.

Before RUBIN, RANDALL and TATE, Circuit Judges.

PER CURIAM:

The plaintiff-appellant appeals the dismissal for want of prosecution of her civil rights complaint. We conclude that, by dismissing the complaint, the district court did not abuse its discretion. Accordingly, the judgment of the district court is affirmed.

## I.

On September 17, 1981, Bennie M. Callip (Callip), a black female, commenced this Title VII–42 U.S.C. § 1981 suit against George Ford (Ford), the Texas Department of Human Resources (TDHR), the Harris County Child Welfare Department (HCCWD), Mary Ann Whitefield (Whitefield) and George Daniel (Daniel).[1] The complaint, which was filed on Callip's behalf by retained counsel, alleges that, because of her race and sex, the defendants discriminated against Callip in the conditions of her employment with HCCWD. The complaint further alleges that discrimination against Callip caused her to become ill and culminated in the termination of her employment. The complaint seeks backpay, workers' compensation or other disability benefits, actual and punitive damages, and preliminary and permanent injunctive relief.

On December 11, 1981, Ford moved to dismiss the complaint on the ground that service of process was defective. Callip did not file a response to the motion. On February 10, 1982, the district court ordered that, if Callip did not respond within fifteen days, the motion would be automatically granted.[2] Callip responded on February 24, 1982, and claimed that the original service was valid and, even if it was not, that she would cause Ford to be served anew. On March 8, 1982, the district court denied Ford's motion to dismiss for defective service and afforded Callip ten additional days in which to accomplish valid service of process upon Ford. Ford was served on Feb-

---

1. On March 8, 1982, the district court granted Daniel's unopposed motion to dismiss.

2. The district court's order states that Callip should have, but failed to, file a response to the motion by January 11, 1982. Presumably, this conclusion (and the other conclusions by the district court in this case with respect to the date upon which Callip should have responded to various motions and pleadings) is based upon Rule 14 B(1) of the Local Rules of the Southern District of Texas. Rule 14 B(1) provides:

 *Responses.* Responses to such motions, unless otherwise ordered by the Judge, will be filed with the Clerk no later than the "Submission Day" [a Monday not less than ten days and not more than thirty days following the date of filing]. Failure of counsel timely to respond may result in the granting of the motion.

ruary 24, 1982, the same day on which Callip responded to the motion to dismiss.

On August 5, 1982, the court dismissed Callip's claims against Whitefield, HCCWD, and TDHR because Callip did not comply with a local rule that requires parties to be served with process within ninety days of the date upon which a complaint is filed. Callip filed a one-sentence motion for a new trial in which she sought relief from the order dismissing the claims against Whitefield, HCCWD, and TDHR. The motion was not accompanied by a brief or supporting memorandum. On December 7, 1982, the district court ordered that, if Callip wanted the court to consider legal arguments in support of the motion, she should submit a brief or memorandum within ten days. Callip failed to do so, and the court thereafter denied relief from the order of dismissal. Callip then attempted to perfect an appeal from the denial of the motion. She filed a notice of appeal in the district court but failed to file an appellate brief in this court within the time prescribed by the rules of appellate procedure. Accordingly, we dismissed the appeal for want of prosecution. On June 7, 1983, Callip filed a Rule 60(b) motion in which she asked the district court to vacate the order dismissing the claims against Whitefield, TDHR, and HCCWD. In support of the motion, Callip argued that the failure to perfect service of process resulted, not from an intentional disregard of the local rules, but from the illness of her attorney, her attorney's mistaken belief that process had been served, and a reduction in her attorney's office staff pursuant to the reorganization of his law practice. The court denied the motion on July 19, 1983.

The case had originally been placed on the trial docket for the district court's March-April 1983 term. The court scheduled a pretrial conference for February 24, 1983, and ordered the parties to submit a joint pretrial order by February 21, 1983. Presumably, because of Callip's abortive appeal (which was noticed on February 2, 1983, and dismissed on April 11, 1983), the pretrial conference did not take place, and the parties did not submit a pretrial order.

Obviously, the district court did not call the case for trial in March or April. A February 6, 1984, Superseding Docket Control Order reset the case for the court's May-June 1984 term. The court ordered the parties to submit a joint pretrial order by April 23, 1984, in preparation for a May 1, 1984, pretrial conference. The court assigned responsibility for the timely filing of the pretrial order to Callip. Despite Ford's written request, Callip did not provide Ford with a proposed pretrial order before the April 23, 1984, deadline. The parties did not file a pretrial order. Instead, relying on Callip's recalcitrant behavior with respect to the pretrial order, Ford immediately moved to dismiss the case for want of prosecution. On April 30, 1984—seven days after the deadline for filing the pretrial order—Callip responded with a motion to continue the trial setting on the ground that a recent reduction in her attorney's legal staff had left him severely overworked. At a pretrial conference on May 4, 1984, the district court denied the motion to dismiss for want of prosecution and continued the case, on the understanding that no further continuances would be granted, until the court's September-October 1984 term. A new Superseding Docket Control Order set August 27, 1984, as the deadline for filing the joint pretrial order.

At the same pretrial conference, Ford apparently discussed the possibility of filing a motion to dismiss or a motion for summary judgment with respect to certain of Callip's claims. The district court ordered Ford to file such a motion by May 18, 1984, and ordered Callip to file a response by June 1, 1984. On May 9, 1984, Ford filed a motion for partial summary judgment, but Callip did not respond until June 11, 1984, ten days after her response was due. On June 13, 1984, Ford filed a motion to strike Callip's untimely response to the motion for partial summary judgment. Callip did not file a timely response to Ford's motion to strike. On July 31, 1984, the court deferred consideration of the motion to afford Callip an additional ten days in which to respond. Callip filed a re-

sponse on August 8, 1984, which avers that the initial response to the motion for partial summary judgment was filed late because (1) her attorney is a sole practitioner; (2) her attorney had been ill; and (3) her attorney had faced unexpected trial settings in other cases following reform of the Harris County state-court docket system. The court thereafter denied both the motion to strike and the motion for partial summary judgment.

On June 13, 1984, Ford also filed a motion to compel answers to interrogatories that had been propounded on May 10, 1984, and for sanctions for failure to respond to the interrogatories within the time prescribed by Rule 33, Fed.R.Civ.P. Again, Callip failed to file a response to this motion and, presumably pursuant to Local Rule 14 B(1), *see* note 2, *supra*, the court granted the motion without a hearing. The court deferred consideration of appropriate sanctions, however, until a hearing scheduled for August 27, 1984, the date upon which the joint pretrial order was due.

At the hearing on August 27, the court awarded Ford $300 in attorney's fees incurred in preparing and presenting the motion to compel. At the same hearing, Ford informed the court that, although the pretrial order was due on that day, Callip had not yet provided Ford with a draft of the order. Ford stated that he intended to file a second motion to dismiss for want of prosecution. Although Callip's counsel did not attend the hearing, an attorney appearing on his behalf told the court that, at that time, the pretrial order was in the process of being typed. Late in the day on August 27, Callip filed what purports to be a joint pretrial order. The order was not circulated to Ford before filing, however, and does not include Ford's inserts. On the following day, Ford moved to dismiss the case for

want of prosecution. The motion recites Callip's failure to comply with the docket control order and further alleges that, to that point in the litigation, Callip had conducted absolutely no discovery.[3] The district court granted Ford's motion and, without making specific findings or conclusions, dismissed the case for want of prosecution on September 17, 1984. This appeal followed.

## II.

Callip argues on appeal that the district court abused its discretion in dismissing this case for want of prosecution. She asserts that the delays experienced in the district court, which at any rate are not "outrageous" or "egregious," flowed from the conduct of her attorney and are not directly attributable to misfeasance on her part. Moreover, Callip claims, the record demonstrates that her attorney was not deliberately dilatory; at most, he was "injudicious in his litigation practices." Finally, according to Callip, the district court erred by not considering the propriety of controlling her attorney's "injudicious" conduct with alternatives less drastic than dismissal.

Ford argues, on the other hand, that the district court acted well within its discretion in dismissing this case. Contrary to Callip's assertions, Ford claims that Callip's conduct was indeed outrageous and egregious: Callip directly disobeyed orders of the court on several occasions. Callip's counsel sought to avoid the consequences of each of these transgressions, according to Ford, with the same tired excuses that he was in poor health and had reduced his office staff. Moreover, the district court repeatedly warned Callip that she must prosecute her lawsuit according to the

---

**3.** The record reveals that the parties engaged in the following discovery:

(1) Deposition of Callip by Ford; noticed on April 3, 1982, taken on June 10, 1982;

(2) Ford's request for production of documents; served on September 23, 1982, answered on November 11, 1982;

(3) Callip's notice of intention to take Ford's deposition; served on May 10, 1984;

(4) Ford's interrogatories to Callip; served May 10, 1984, answers compelled on July 10, 1984.

The record itself does not reveal whether Callip actually took Ford's deposition. Both parties represent in their briefs that the deposition was cancelled by Callip.

rules and orders of the court. Yet, the court demonstrated remarkable patience and accommodated Callip for as long as one could reasonably have expected. Given the clear pattern of delay existing on this record, Ford asserts, any sanction less than dismissal would have been futile. Accordingly, the district court properly dismissed the case for want of prosecution.

### III.

Callip's failure to comply with the district court's June 6, 1984, docket control order regarding the filing of a joint pretrial order triggered the dismissal of this case. The 1983 amendments to the Federal Rules of Civil Procedure added subdivision (f) to Rule 16.[4] Rule 16(f) provides for the imposition of various sanctions for violations of scheduling and other pretrial orders of the district court, such as the June 6, 1984, order. One of the sanctions authorized by

4. Rule 16(f) provides:
 (f) Sanctions. If a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, or if a party or party's attorney is substantially unprepared to participate in the conference, or if a party or party's attorney fails to participate in good faith, the judge, upon motion or his own initiative, may make such orders with regard thereto as are just and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing him or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

5. The advisory committee note provides in part:
 Original Rule 16 did not mention the sanctions that might be imposed for failing to comply with the rule. However, courts have not hesitated to enforce it by appropriate measures. *See, e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (district court's dismissal under Rule 41(b) after plaintiff's attorney failed to appear at a pretrial conference upheld); *Admiral Theatre Corp. v. Douglas Theatre,* 585 F.2d 877 (8th Cir.1978) (district court has discretion to exclude exhibits or refuse to permit the testimony of a witness not listed prior to trial in contravention of its pretrial order).

Rule 16(f), by reference to Rule 37, is dismissal of the case. This rule merely makes explicit a discretionary power to control the expeditious disposition of docketed cases that appellate courts have long recognized to be an inherent attribute of federal district courts. *See, e.g., Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). As the advisory committee note to Rule 16(f) makes clear,[5] the 1983 amendments were not intended to alter the standard for evaluating the propriety of the exercise of the district court's inherent power to dismiss or to impose lesser sanctions for violations of court orders and rules and for dilatory conduct in general. *See Coleman v. Ballentine,* 101 F.R.D. 541, 543 (N.D.Ill.1984) (1983 amendments did not change standard for granting dismissal). Therefore, we shall evaluate the dismissal of this case according to the extensive body of caselaw, most of which has developed around Rule 41(b), Fed.R.Civ.P.,[6]

To reflect that existing practice, and to obviate dependence upon Rule 41(b) or the court's inherent power to regulate litigation, *cf. Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), Rule 16(f) expressly provides for imposing sanctions on disobedient or recalcitrant parties, their attorneys, or both in four types of situations. Rodes, Ripple & Mooney, *Sanctions Imposable for Violations of the Federal Rules of Civil Procedure* 65–67, 80–84, Federal Judicial Center (1981). Furthermore, explicit reference to sanctions reenforces the rule's intention to encourage forceful judicial management.

6. Rule 41(b) provides:
 (b) Involuntary Dismissal; Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall

governing dismissals for want of prosecution.

The district court's order of dismissal for want of prosecution does not state whether the suit is dismissed with or without prejudice. Clearly, the district court had the discretion to choose either option. Unless an involuntary order of dismissal specifies that it is without prejudice, however, it "operates as an adjudication upon the merits." Rule 41(b), Fed.R.Civ.P. *See also Weissinger v. United States,* 423 F.2d 795, 798–99 (5th Cir.1970) (en banc). Thus, the district court has effectively imposed the ultimate sanction upon Callip of dismissal with prejudice.

"On appeal from an involuntary dismissal with prejudice [for failure to prosecute or to obey the orders and rules of the district court], we review the district court's judgment for an abuse of discretion." *Morris v. Ocean Systems, Inc.,* 730 F.2d 248, 251 (5th Cir.1984). We have consistently recognized, however, that dismissal with prejudice " 'is an extreme sanction that deprives a litigant of the opportunity to pursue his claim,' " *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 556 (5th Cir.1981) (quoting *Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 247 (5th Cir.1980)); accordingly, we have, in a long line of cases, sought to define the limits of the district court's discretion in this context. In *Rogers v. Kroger Co.,* 669 F.2d 317 (5th Cir.1982), we reviewed the cases from this circuit and restated the rule that we have consistently applied: "dismissals with prejudice [for want of prosecution] will be affirmed only upon a 'clear

record of delay or contumacious conduct by the plaintiff, ..., and when lesser sanctions would not serve the best interests of justice.' " *Id.* at 320 (quoting *Pond v. Braniff Airways, Inc.,* 453 F.2d 347, 349 (5th Cir. 1972)). Moreover, we noted that most of the cases affirming dismissals with prejudice have involved the presence of one or more of three "aggravating factors": (1) delay attributable directly to the plaintiff, rather than his attorney; (2) actual prejudice to the defendant; and (3) delay caused by intentional conduct. *Id.* From this review, we concluded that the sanction of dismissal with prejudice is reserved for "the most egregious circumstances." *Id.*

The district court did not make express findings in the order granting the motion to dismiss for want of prosecution. Therefore, unless the record reveals at least a clear pattern of delay or contumacious conduct and the futility of lesser sanctions, we must vacate the district court's order of dismissal. *See Hornbuckle v. Arco Oil & Gas Co.,* 732 F.2d 1233, 1237 (5th Cir.1984) (record did not disclose whether district court considered lesser sanctions; remanded for express findings).

At the outset, we note that Callip's attempt to soft-pedal the severity of her transgressions by characterizing her attorney's conduct as "injudicious" is not convincing. By our count, Callip delayed the prosecution of this action, prior to the final default with respect to the pretrial order, by failing to comply with at least nine deadlines imposed by the rules of procedure or by specific orders of the court.[7]

---

make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

7. The missed deadlines to which we refer include:

(1) The January 11, 1982, deadline for filing a response to Ford's motion to dismiss for defective service;

(2) The ninety-day deadline for perfecting service of process upon Whitefield, TDHR, and HCCWD;

(3) The deadline for submitting authorities in support of the motion for new trial;

(4) The deadline for filing an appellate brief with the Court of Appeals;

(5) The April 23, 1984, deadline for filing a joint pretrial order;

(6) The June 1, 1984, deadline for filing a response to Ford's motion for partial summary judgment;

(7) The July 2, 1984, deadline for filing a response to Ford's motion to strike;

Moreover, in five of these situations, the district court accommodated Callip by providing additional time in which to comply with procedural rules and court orders.[8] Still, Callip failed to comply with the April 27, 1984, pretrial order deadline. We strongly disapprove of such conduct and find it wholly unacceptable for a member of the bar to prosecute a lawsuit in this manner. Our disapproval of the conduct of Callip's counsel is not, however, a sufficient basis, standing alone, upon which to affirm the dismissal for want of prosecution.[9] We turn, therefore, to an evaluation of the record in the light of the standards outlined above.

## IV.

Callip argues that the instant case is not distinguishable in any meaningful way from *McGowan*, 659 F.2d at 554, in which we held that the record did not support the district court's decision to dismiss with prejudice. In *McGowan*, the plaintiffs, through counsel, committed the following procedural defaults: (1) plaintiffs refused to reimburse defendant for the cost of copying documents requested by plaintiffs during discovery; (2) they filed the pretrial order six days after the deadline imposed by the court; (3) plaintiffs filed proposed

(8) The June 10, 1984, deadline for filing a response to interrogatories;
(9) The July 2, 1984, deadline for filing a response to the motion to compel.

**8.** Examples of the district court's patience in dealing with Callip's recalcitrant conduct include:
(1) The February 10, 1982, order granting Callip ten additional days in which to respond to Ford's motion to dismiss for defective service;
(2) The December 7, 1982, order granting Callip ten additional days in which to file authorities in support of his one-sentence motion for new trial;
(3) The May 4, 1984, order denying the motion to dismiss for want of prosecution and granting a continuance until the September-October term;
(4) The July 31, 1984, order granting Callip an additional ten days in which to respond to Ford's motion to strike; and
(5) The August 27, 1984, order denying the motion to strike and the motion for partial summary judgment.

findings and conclusions forty-three days after the deadline imposed by the court; and (4) they failed to comply with the district court's order to prenumber and exchange exhibits within thirty days of the pretrial conference. Moreover, by the time of dismissal just prior to the scheduled trial date, plaintiffs had conducted very little discovery. Although we considered the missed deadlines "inexcusable," we reversed the district court's order dismissing the case for want of prosecution because there did not exist a clear record of delay or contumacious conduct and "[t]here is no indication ... that the district court or magistrate considered any alternative sanctions to expedite the proceedings." *Id.* at 557. Additionally, the delay seemed attributable to plaintiffs' attorney alone: "plaintiffs themselves appear to be innocent parties." Finally, it appeared that, although counsel's defaults were negligent, they were not intentional.

The decision in *McGowan* is consistent with many other cases in which, on similar showings, we have found that the plaintiff's failure to comply with scheduling and other pretrial orders and rules did not establish a clear record of delay or contumacious conduct.[10] Most of these cases in-

**9.** *See, e.g., Hornbuckle*, 732 F.2d at 1237 (reversing dismissal notwithstanding "disregard for both orderly procedure and [attorney's] responsibilities as a member of the bar"); *Morris*, 730 F.2d at 252 (reversing dismissal notwithstanding that "plaintiff's counsel indeed did not act with the consideration and discretion expected of those who are admitted to practice before federal district courts"); *Rogers*, 669 F.2d at 322 (reversing dismissal on record "replete with incidents of plaintiff's attorney's ineptitude or negligence, or both"); *McGowan*, 659 F.2d at 558 (reversing dismissal despite counsel's "negligent and dilatory attitude" and "inexcusably delinquent filing"); *Burden v. Yates*, 644 F.2d 503, 504 (5th Cir.1981) (reversing dismissal notwithstanding conduct that was "at best, a sorely deficient approach to litigation").

**10.** *See, e.g., Morris*, 730 F.2d at 248 (failure to comply with two court-imposed deadlines for notification of client's acceptance of settlement offer); *Rogers*, 669 F.2d at 317 (announcement of "not ready" on day of trial following denial of motion for continuance); *Burden*, 644 F.2d at 503 (late filing of status report followed by two

volve noncompliance with two or three orders or rules of the district court. Moreover, we have reversed at least one dismissal for want of prosecution where the immediate failure to comply with two separate pretrial orders was preceded by conduct that, although not detailed in our opinion, was characterized by "dereliction and failure to meet ... responsibilities at every stage of [the] proceeding from the time issue was joined." *Flaska,* 389 F.2d at 886.

■ The record of delay in this case is stronger than the record existing in *McGowan* and the similar cases referred to above. This case involves more than noncompliance with two or three pretrial orders. In fact, there are examples of delay attributable at least to Callip's counsel at every stage of the proceedings—(1) service of process; (2) pretrial motions; (3) discovery; and (4) pretrial scheduling and preparation. Moreover, Callip compounded these delays by commencing and then abandoning an appeal to this court from a district court order that was itself entered because of Callip's failure to comply with a district court deadline. Based on these facts, we cannot say that the district court abused its discretion in concluding that Callip's conduct created a clear record of delay. *See Morris,* 730 F.2d at 252 (a clear record of delay is characterized by "significant periods of total inactivity").

Of course, that conclusion does not end our inquiry. Recently, we have made it quite clear that a dismissal with prejudice is not appropriate unless less severe sanctions "would not serve the best interests of justice." *Rogers,* 669 F.2d at 320. Moreover, we have said that we cannot affirm a dismissal unless the district court expressly considered alternative sanctions and determined that they would not be sufficient to prompt diligent prosecution or the record reveals that the district court employed lesser sanctions prior to dismissal (assuming that plaintiff was capable of performing them) that in fact proved to be futile. In *Hornbuckle,* 732 F.2d at 1237, for example, we said that, where the record does not disclose that the district court considered alternative sanctions, "findings of fact [on the appropriateness of sanctions short of dismissal] are essential for our consideration of the inevitable argument that the dismissal was an abuse of discretion."

■ We have suggested alternatives to dismissal, including the "[a]ssessments of fines, costs, or damages against the plaintiff or his counsel, attorney disciplinary measures, conditional dismissal, dismissal without prejudice, and explicit warnings," that may be effective to "safeguard a court's undoubted right to control its docket." *Rogers,* 669 F.2d at 322. Providing plaintiff with a second or third chance following a procedural default is a "lenient sanction," which, when met with further default, may justify imposition of the ultimate sanction of dismissal with prejudice. *Porter v. Beaumont Enterprise & Journal,* 743 F.2d 269, 272 (5th Cir.1984). Thus, in *Ramsay v. Bailey,* 531 F.2d 706, 709 n. 2 (5th Cir.1976), we held that, where "plaintiff was fully and repeatedly apprised of the possible imposition of the ... sanction [of dismissal with prejudice]," it was not necessary for the district court to consider "other possible sanctions, such as conditional orders of dismissal or disciplinary action against the attorney."

successive failures to file pretrial order on time); *Gonzalez,* 610 F.2d at 241 (failure to attend pretrial conference and to comply with court's direction to obtain admission to practice before the court); *Silas v. Sears, Roebuck & Co.,* 586 F.2d 382 (5th Cir.1978) (failure to answer interrogatories, failure to confer with defendant on pretrial order, failure to appear at pretrial conference); *Boazman v. Economics Laboratory, Inc.,* 537 F.2d 210 (5th Cir.1976) (initial failure to respond to motion to dismiss; subsequent failure to respond after express order to do so within ten days); *Graves v. Kaiser Aluminum & Chemical Co.,* 528 F.2d 1360 (5th Cir.1976) (failure to file pretrial order and to attend pretrial conference); *E.F. Hutton & Co. v. Moffatt,* 460 F.2d 284 (5th Cir.1972) (failure to appear at pretrial conference or to file pretrial stipulation); *Flaska v. Little River Marine Constr.,* 389 F.2d 885 (5th Cir.) (appearance at initial pretrial conference totally unprepared; unprepared again at second pretrial conference after eleven-day postponement), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968).

The district court did not expressly find that, following Callip's failure to meet the pretrial order deadline, sanctions alternative to dismissal would have been inappropriate as a means for forcing diligent prosecution of this case. We note, however, that the record does reveal that the district court imposed lesser sanctions prior to dismissal to which Callip responded with additional defaults. For example, upon Callip's failure to respond to two of Ford's motions, the court, in effect, conditionally granted the motions. In addition, the court automatically granted the motion to compel upon Callip's failure to respond and assessed attorney's fees against Callip. Finally, in granting a continuance from the May-June trial setting, the district court stated that "[n]o further continuances will be granted." Despite this warning, Callip again missed the pretrial order deadline on August 27, 1984.

 We commend the district court for its patience. On this record, we cannot say the district court abused its discretion in concluding that Callip's further default in the face of these lesser sanctions justified dismissal with prejudice. We of course have been reluctant to affirm dismissals based on conduct attributable to counsel, rather than the plaintiff. Still, a party is bound by the acts of his attorney. *See Link v. Wabash R. Co.*, 370 U.S. at 633, 82 S.Ct. at 1390. We believe that there comes a point at which the deficiency in counsel's performance puts the plaintiff on notice that, unless a new lawyer is obtained, the very continuation of the lawsuit is threatened. Given the clear record of delay in this case, we conclude that counsel's performance reached that point. Accordingly, we do not believe on these facts that dismissal with prejudice is an unjust sanction.

### V.

For the reasons set forth above, the order dismissing this case for want of prosecution is AFFIRMED.